The first case up this morning is 411-0178, Marriage of Sullivan. For the appellant is Mr. Appleby. You are here, sir? Yes, sir. And for the appellate, Mr. Bongean. Mr. Appleby, you may proceed. May it please the Court, Counsel. In fact, I believe this was the same panel that heard, no, did not hear, but considered the first appeal in this particular dissolution of marriage case. In the first appeal, the Court ordered that arguments were to be dispensed with. And with your permission, I'd like to just comment on one point in that case because there was no oral argument. The issue was a matter of a petition for Rule 137 sanctions. That petition was filed on the 31st of December. Mr. Bongean then filed on the 22nd of January a response together with a notice of hearing for the 30th. In the Rule 23 decision, basically said regardless of interpreting the rule as far as effective service, there was four days' notice for the hearing. And I, in that case, had filed a motion to continue. Unfortunately, the decision did not mention, as was pointed out in the motion, is that four days did not, from my perspective, provide sufficient time to review the response and evaluate it with then the intention of either filing a reply or going forward. And the only reason I bring this forward is that there was no emergency or exigency of circumstances. And the practice has become, or at least it has become in this case, is where the petitioner sets a hearing. And I will suggest relatively short notice hearing, then to put the pressure on the respondent. And just as that happened at the end of the primary case and in the first appeal, so it started with the matter that is before you today. As I recall, there was an original petition for attorney's fees, the subject of which was representation before this court in the first appeal. It was filed, I think, on January 22nd. Then in July, I believe, there was an amended petition. No, I'm sorry. But going forward, counsel for the respondent appeared pursuant to a notice of hearing that had been sent to me. When there was no appearance on behalf, I'm sorry, I'm the respondent, the judge, Tim P. Olson, advised that there may be a question of representation because it was post-appeal and that I may in fact not be representing the respondent at that point in time. So the judge then set a new date and the petitioner, through her attorney, mailed to the respondent not only the petition for attorney's fees, but also a notice of hearing on a date that had been set by the trial judge together with two requests of discovery, one being a supplemental interrogatories and the other a supplemental request for document production. As I stated in the brief, I think it's the first time where the commencement of a civil match was sent with a notice of trial, leaving only a minimal period of time for the respondent then to adequately respond to the petition. This matter was not a matter of temporary child custody or a situation that demonstrated any exigent circumstances whereby the trial court should have given the highest priority. Wasn't this all just a big to-do about getting attorney fees in this proceeding? Exactly. So what's the big to-do here? Why don't you just show up and argue attorney fees before the judge? That's all this was about. This is an ancillary proceeding to the divorce which had already been resolved. The question is, he's asking for attorney fees, he's saying, well, it should be entitled to be, show up and hear it. I could show up at the hearing and at that time he would then present his financial affidavit that would put the respondent at a distinct disadvantage. That happened in the original hearing for temporary relief in this case two or if not three years ago. And I would suggest that the Seventh Circuit rules as far as financial affidavits, and it's required any time there's a financial issue such as attorney fees, that it should be filed with the petition itself. If you're going to ask for attorney fees, then I think you should take the time to investigate it, make a determination. So when it comes to discovery matters, you're looking at a panel composed of decades' worth of trial judges, and we tend to be very deferential to how the trial judge involved. There's a sense of who the parties are, who the lawyers are, what's going on, what needs to be going on, handles discovery matters. So in order to prevail on this claim, you have to be arguing to us that Judge Olson's handling of all this was unreasonable so as to not be entitled to the normal deference. What was unreasonable about it? Setting, well, the very first thing was setting a hearing date. That was unreasonable? No reasonable judge could do that, and somehow this caused you serious prejudice that affected the entire, and tainted the entire proceeding? That's your position? To send a notice to a lay person, together with a notice of hearing, that basically provided for a trial, 37, I think, 38 days, I think is a mistake. What did he do? I'm sorry? What did your client do, anything? He didn't call me. And what did you do? He did call me. What did you do? Nothing. Filed a response, a motion, because that petition, first of all, didn't even cite the correct statutory section. So that mattered? Yes, it does, sir. Why though? Were you confused? Were you misled? Did you not understand what was going on? I think I understood, but I don't think the petitioner understood the 508B, but that's what the petition tried to set forth. What's your purpose in representing him? I'm sorry? What is your purpose in representing your client? My purpose is twofold. One, trying to reverse the trial judge's decision that awarded $6,000, again, to be paid on a short time period. This is in the initial case. And secondly, to allow myself to get paid. Because as I pointed out in the motion to reconsider, I didn't realize going into the hearing, although the old saying, the best defense is an offense, is that we were going to put my attorney's fees on trial. Now, my attorney's fees, as set forth, a little over $9,000, was much less than both the dissolution case… Your main $9,000 fee was for doing what? …the representation in the dissolution case before the trial court, and then filing the appeal where Mr. Bongean has correctly characterized, you know, I lost on each point that I raised. Again, I think an attorney can only do the best he possibly can for his client. I am sorry that there was an oral argument. It's just like the original case. And I'm aware of the waiver rule, and this court has in several of the issues said it was definitely waived. But one of the issues, I thought, was a demand for a bill of particulars. I did not appear at, quote, order of default that was entered. Mr. Appleby, aren't you arguing things that we've already resolved in the first appeal? Well, I'm just trying to point out, Judge, yes. I was just going to use this as an example. And that is how can an attorney of 26 years file such a motion and an experienced trial judge then just allow it when it specifically was authorized by statute? Now, I don't think at any time we have put procedure over substance in this matter. I think if you're going to file a petition for attorney's speech, you should take the time. First, the determination that my client has the inability to pay. I would suggest when you look at the IMI's billing of the attorney, there was never such determination made. It wasn't made until at least seven, eight months, maybe, after the original petition was filed. Now, what is the purpose of attacking a pleading, and I would suggest a motion for attorney's speech is a pleading, for being insufficient? This pleading, to me, was apparent. It was an attempt to state a cause under 508B on the basis that the appeal was frivolous and not brought in good faith. Now, when we went before the trial judge, he simply recognized, you know, Mr. Bonting said, oh, it's not 508B, it's 508A. Well, what should be the requirements? There should be, I believe, a definite requirement that requires the petitioning attorney to do some work, to file a factual petition. In this case, attorney's speech was granted in the case in chief, and apparently there was no question that it was going to be granted again, even though the party's circumstances had changed. And it was at the hearing that I learned that the petitioner had bought a new house during the pending appeal. She sold her house, bought a more expensive house. Now, if that type of person is unable to pay attorney's speech, I have to raise a question. This is not an individual without any income. So, do you think she has to be shown to be financially unable to pay? Absolutely. Did you look at Irma O'Hagan out of our district? I've looked at so many cases. Is that a recent case? Relatively recent, but more than a year old. If this is a case I'm thinking of, I would say yes. And I guess if this is the one I'm thinking of, the court ruled contrary to what I would have thought, but in doing so showed the flexibility that the court has in addressing an issue such as attorney's speech. Didn't Judge Olsen, even if we took your standard to be the correct one, didn't Judge Olsen find she was financially unable to pay? That she'd had a stroke, she was disabled? Yes, ma'am. And that the respondent had $11,000 in a bank account? Yes, ma'am. He did. Because once he stopped paying maintenance, and the condition for that termination was he lost one of his retirement fund payments, it became exhausted. And as he testified in court, the other retirement fund was going to be exhausted by his calculations in I think it was like five months. Actually, I think it lasted six months, but he had calculated it out where he was going to have an $800 and some odd dollar reduction in his income. That then, plus when you look at the original case, in order to keep this house, he was ordered, and he had the ability to refinance his house, and he took on an additional $45,000 of indebtedness. And today, or at the time he originated the loan, it was for $141,000. Now, the fact that he had $11,000 at the time says, one, he has the ability to be thrifty, and two, that he and I hadn't settled up because he was so upset in the beginning of the case when he was ordered to pay I think $859 or whatever. He felt that kind of turned himself upside down. I know that I think there were two times he borrowed from his children. What do you think is going to happen after the end of this appeal? This is done. This is going to be the end of it. You don't think Mr. Bonjean is going to go back to the trial court and ask for fees for this appeal? Well, Judge Olson said surely the respondent knew that the appeal, that there would then be a request. If the appeal was lost, there would be a request for attorney's fees. And I would suggest that is an erroneous reason because unlike – the fact of attorney's fees should not be based on whether the appeal succeeds or fails. I agree with that. Because she may well have been entitled to attorney's fees or a contribution to attorney's fees even if you prevailed on appeal, depending on their financial status. Right. This is a case where this lady – and again, we never did find out any value if you look at her financial affidavit when it comes to household goods unknown. I argued it in the original case, tried to do it here. This lady has hundreds of Christmas collectibles. There was a picture in the – Is any of this before us on appeal at this stage? I'm sorry? Is any of what you're now talking about pertinent to the issues of this appeal? I think her assets are pertinent to a determination of whether or not she has the ability – Is this in the record before Judge Olson? Yes, sir. And what you're now arguing about, the Christmas collections? I didn't bring it up again because we're wasting time. Well, then why are you bringing it up to us? Because again, you haven't – Aren't we limited to the record before us? I'm sorry? Aren't we limited to the record you made at the trial court? Yes, sir. I think this court would do a service if this appeal is granted, and that decision states that if you're going to file a petition for attorney's fees, to be supported by not only an affidavit by the attorney, but an affidavit of the petitioner that would then express not an itemization of every financial matter, but enough facts to suggest an inability to pay. In this case, I do not know whether Mr. Bonge knew she had bought a new house or not. I learned that at the hearing. And because of the way the whole thing unfolded, I have felt that I was never on even ground as far as preparation going into a hearing. This was pushed and pushed and pushed. Now, I will tell you, I have been without any secretary or clerical help since June of 2008. It's like filing a reply brief. Your time is up, Mr. Appleby. All right. You have a chance to address us again in rebuttal. Thank you, Judge. Mr. Bonge? May it please the Court. Counsel? I'm not sure now I know where to begin. Mr. Appleby raises four points in his appeal. The first one complains about the petition. I have to acknowledge not my best effort. But that being said, there is no question that Mr. Sullivan, Mr. Appleby understood, certainly by September, what was at issue and how it was going to be addressed. Mr. Appleby, I'm not sure that he's suggesting prejudice, but there certainly was no prejudice to Mr. Sullivan with respect to the thinness, if you will, of the petition. Mr. Appleby then wants to complain about procedures again, which he has this morning, even taking us back to the original case. His second point is that Judge Olson should have quashed the discovery request that I sent out in August of last year. Well, I forgot, Judge Olson didn't, that when you send a pleading after the 30-day period to Mr. Appleby, he just won't show up, and he didn't, and he didn't have to. Any other attorney that I practiced would have shown up or would have contacted me and we'd have got to the business of deciding whether or not Mr. Sullivan was going to have to pay attorney fees. So Judge Olson said we weren't going to do anything at the August hearing and set the case over and directed me to contact and to communicate with Mr. Sullivan. Well, I did so, and as I suspected, Mr. Appleby got involved in the case. Well, what happened at the September hearing? The judge denied the motion to quash, but he also didn't require Mr. Sullivan to respond or penalize him in any way. He gave him an additional 28 days to respond to the discovery request. I don't even understand the motion to quash, quite honestly, and the complaint. As far as Mr. Appleby's complaints today and in his brief that discovery, the time period was too limited. I mistakenly, because then the petition came for leave to appeal, filed way too soon in January of 2010 my initial petition for fees, and then after the mandate in July of last year filed an amended petition. There's been no question what I have been seeking, and Mr. Appleby, as he did in the case, the divorce case itself, with this attorney fee process, and as he does most usually, spent more time arguing over procedural matters that are of little, if any, importance in cases instead of taking care of what was most important, and that is the issue at hand. In this case, we had a very limited issue, not complex. Could my client pay or not, and if she could not, could Mr. Sullivan pay these fees? It was that simple. That's what was described by Judge Olson. The judge set up a discovery schedule, and Mr. Appleby didn't follow that. He didn't file the discovery request or serve them on my client through me within the time period provided. He complains that he got the discovery responses the day of the hearing. I'm not sure he was even entitled to them then, but I gave them to him ahead of time. He had the right to engage in other discovery processes. If he had a question about my client's banking or the like, all he had to do was send a subpoena to the bank. I guess I just am confused by, again, his objection to the discovery process. And I guess, again, it's my position, his fault that he wasn't ready. There was a time period set in place. He ignored that because he wanted to argue over other things instead of taking care of what was most important, and that is the information he may want or need for an attorney fee hearing. The final issue is what really matters, and that is should Mr. Sullivan have been ordered to pay his former wife's attorney fees for the appeal. The facts very simply are that my client is about $700 a month short in monthly income and expenses. That shortfall was occasioned, as Mr. Appleby pointed out, in large measure by the fact that Mr. Sullivan was no longer required to pay maintenance. In addition, her financial circumstances were such that she had $400 in the bank and $8,000 with a credit card debt. Yes, she had purchased over the two years since the divorce a new home, but she went from a $50,000 home to a $65,000 home. We want to remember that Mr. Sullivan is living in a $160,000 home, and both of them mortgaged, although my client is in the hills and Mr. Sullivan heading that direction. So the question of whether or not my client could afford to pay her fees, again, I would simply say that I think the facts speak for themselves. She could not do so. As far as Mr. Sullivan, he had an excess of income over living expenses of $350. I also pointed out he's spending $250 a month for churches and charities. Not that that's an issue on the one hand, but in certain circumstances that may become important. At the time that the petition was filed, Mr. Sullivan had somewhere around $13,500 in his bank account. By the time we were in hearing, he had about $11,000 because of a $2,000 Internal Revenue Service issue. The judge, and unfortunately, by the time we were at trial, the attorney fees had risen to just over $7,000. Judge Olson didn't require Mr. Sullivan to pay all of the attorney fees, obviously most of them. And Mr. Sullivan paid the fees. Paid the fees, I think, before we ever had a hearing on the last of the motions to consider. So, reconsider, excuse me. So, looking at the facts of the case, there is no question that attorney fees should have been awarded, just as they were in the original divorce, and really for the same reasons. Mr. Sullivan's income is more than twice my client's. Her income is not going to change. She has no ability to change it. And so, basically, we're looking at a situation where the complaints by Mr. Appleby are not well-founded, and the court's decision should be affirmed. Thank you. Thank you, counsel. Mr. Appleby, any rebuttal, sir? Thank you. May it please the court. Mr. Bongean stated to this court that the petition was, quote, not my best effort, quote. I sometimes wonder, you know, why do you go to law school? Or why, you know, lawyers are quite... Is that going to help us? I think going back to basic pleading, in my experience, and again, I went through a period of time, I thought, you know, you do a motion practice, but then I went through a period of time, no, let's get to the matter. I'm not a big litigator. I don't do a lot of litigation. But I do think that the basic statutory requirements should be followed. He says, well, there was no prejudice as to the thinness of the petition. Well, the fact of the matter is, the first question, did he know that she had bought, sold a house, and bought a new house? Now, I don't remember the value of the house. I know that the loan amount or the mortgage loan amount was $65,000. He says, well, Mr. Sullivan has twice the income. He also has twice the debt. His mortgage loan is $141,000. Mr. Sullivan, I think, can be expected to pass away owing on a mortgage loan on his residence. Mr. Bongean points out, $250, church and charity. It absolutely amazes me, I mean, how that can be emphasized. I only had one case, and that is where the fellow put down he had $200 or $300 a month, and then demonstrated he didn't give to church, as he represented to the court. Here, you have a gentleman, he was 85 at the time, that has regularly given. Now, discovery. Why do we have rules? Rule 201, no discovery shall be commenced prior to the time of the filing of the appropriate answer response or the time that would be accorded for it. Why? Because I think, it's my humble opinion, that to send a lady a discovery request is that poor. There are so many people that get so upset just receiving a summons, and in fact, the notice of hearing was like a summons. And then you compound that with the discovery request. He says, well, there was no pledges, we were given 28 days to respond to discovery. Well, as I recall, Judge Olson said, first, you will file a financial affidavit in seven days. Now, I've always given my clients a detailed worksheet, and I used to have a very good secretary that we worked hard to give as accurate figures as we could, and that's very difficult to do. Now, when you look at the petition, or the, Mr. Sutherland, you know, originally, their affidavit was the same in the original trial, a year after the first affidavit was filed. And in this case, there were then comments about, oh, well, we made mistakes here, we made mistakes there. Again, it comes back, I think, that there needs to be a good effort to produce accurate figures. On discovery, I think the court abused the authority granted to supervise. One, there was no reason for this court to, quote, supervise discovery. There had been no request for it. And for Mr. Bongean then to say, well, they could have sent a subpoena to the bank, didn't even know what bank, until we were in the hearing. And he did provide me with their discovery response at the time of the hearing, and he also admitted he could have done it sooner. Thank you, Mr. Appleby. Your time is up. This court will take this matter under advisement and be in recess for a few moments.